**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO.: 19-cv-25217 (DPG)**

**COMMODITIES & MINERALS**
**ENTERPRISE LTD.,**

                    **Petitioner,**

**vs.**

**CVG FERROMINERA ORINOCO, C.A.,**

                    **Respondent.**

_____/

**RESPONDENT'S MOTION TO VACATE ORDER GRANTING PETITION TO
CONFIRM, RECOGNIZE, AND ENFORCE FINAL ARBITRATION AWARD AND
FOR ENTRY OF JUDGMENT AND INCORPORATED MEMORANDUM OF LAW**

**ASSOULINE & BERLOWE, P.A.**

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................................ 3

**I.**     **PRELIMINARY STATEMENT** ................................................................. 5

**II.**    **FACTUAL BACKGROUND RELEVANT TO THIS MOTION** ................................. 6

**III.**   **MEMORANDUM OF LAW** ............................................................................. 7

**A.**     **The Order Should be Vacated because CME has not Demonstrated that Service of Process was Properly Effectuated Against FMO** ................................................................ 7

(1)     Service on an Instrumentality of a Foreign Sovereign ........................................ 9

(2)     There is no Special Arrangement regarding the service of process ..................... 9

(3)     CME has failed to perfect service of initial Process on FMO. ......................... 12

(4)     FMO cannot be attributed with actual notice. .................................................. 15

**B.**     **In the alternative, the order should be vacated under Fed. R. Civ. P. 55(c) or Fed. R. Civ. P. 60(B)(1)(b)** ...................................................................................................... 16

(1)     FMO was unable to interpose papers earlier. ..................................................... 17

(2)     FMO has several meritorious defenses against the confirmation and enforcement of the Final Award. ........................................................................................................... 18

(3)     CME would suffer no prejudice. ......................................................................... 20

**IV.**    **CONCLUSION** .............................................................................................. 21

**ASSOULINE & BERLOWE, P.A.**

# TABLE OF AUTHORITIES

**Cases**

*Albra v. Advan, Inc.*, 490 F.3d 826 (11th Cir. 2007) ..................................................... 14

*Americatel El Salvador, S.A. de C.V. v. Compania de Telecomunicaciones de El Salvador, S.A. de C.V.*, 2007 WL 2781057, Case No. 07-21940 (S.D. Fla., Sept. 19, 2007) ................... 12, 13

*Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428 (1989) ............................... 7

*AT&T Techs., Inc. v. Comms. Workers*, 475 U.S. 643 (1986) ...................................................... 18

*Codigo Music, LLC v. Televisa S.A. de C.V.,* 2017 WL 4346968, Case No. 15-civ-21737-Williams/Simonton (S.D. Fla. Sept. 19, 2017) ........................................................... 11

Compania Interamericana Export–Import, S.A. v. Compania Dominicana de Aviacion, 88 F.3d 948 (11th Cir.1996) ................................................................................... 15, 16

*Crystallex International Corp. v. PDV Holding Inc.*, 2019 WL 6785504, C.A. No. 15-cv-1082-LPS (D. Del. Dec. 12, 2019) ....................................................................... 16

*De Gazelle Group, Inc. v. Tamaz Trading Establishment*, 817 F.3d 747 (11th Cir. 2016) ............ 7

*England v. Sys. Mgmt. Am. Corp.,* 38 F. Appx' 567 (Fed. Cir. 2002) .......................................... 18

Fed.R.Civ.P. 4 ......................................................................................................................... 15

*First Options of Chicago v. Kaplan*, 514 U.S. 938 (1995) .......................................................... 18

*Grupos Unidos por el Canal, S.A. v. Autoridad del Canal de Panama*, 2018 WL 3059649, Case No. 17-23996-Civ-Scola (S.D. Fla. June 20, 2018) ......................................... 10, 14

*Hall-Johnson v. Golden Gate Regional Center Inc.*, No. 19 Civ. 04177, 2020 WL 2474386  (N. D. Cal. May 13, 2020) ................................................................................... 17

*Hardy Exploration & Prod. (India), Inc. v. Gov't of India*, 2016 U.S. Dist. LEXIS 164956 (D.D.C. Nov. 30, 2016) ..................................................................................... 9

*Harris Corp. v. Nat'l Iranian Radio & Television*, 691 F.2d. 1344 (11th Cir. 1982) ................... 14

*Howsam, v. Dean Witter Reynolds, Inc.,* 537 U.S. 79 (2002) ...................................................... 18

*In the Matter of Arbitration between Marine Trading Ltd. v. Naviera Comercial Naylamp S.A.*, 879 F.Supp. 389 (S.D.N.Y. 1995) ........................................................................... 13

*Kristian v. Comcast Corp.*, 446 F.3d 25 (1st Cir. 2006) ............................................................. 18

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614 (1985) ....................... 19

*Modern Font Applications v. Alaska Airlines*, 19 Civ. 00561, 2020 WL 3065157 (D. Utah, Jun. 9, 2020) ............................................................................................... 17

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999) ................................. 11

*OGM, Inc., v. Televisa, S.A. De C.V., et al.,* No. CV 08-5742-JFW (JCx), 2009 WL 1025971 (C.D. Cal. April 15, 2009) .................................................................................... 11

*Onmi Capital Int'l, Ltd. v. Rudolph Wolff & Co.*, 484 U.S. 97 (1987) ........................................ 11

*Orange Middle E. & Afr. v. Republic of Guinea*, 2016 U.S. Dist. LEXIS 65147 (D.D.C. May 18, 2016) ................................................................................................... 9

*Perez v. Wells Fargo, N.A.*, 774 F.3d 1329 (11th Cir. 2014) ..................................................... 15

*Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries*, 353 F.3d 916 (11th Cir. 2003) . 15

*PTA—FLA, Inc. v. ZTE USA, Inc.* 2015 WL 12819186, Case No. 3;11-cv-510-J-32JRK (M.D. Fla. August 5, 2015) ............................................................................................ 12

*Rent-A-Center v. Jackson,* 561 U.S. 63 (2010) ........................................................................... 18

*Rismed Oncology Systems, Inc. v. Baron*, 638 Fed.Appx. 800 (11th Cir. 2015) ............................ 7

*Sonera Holding B.V. v. Cukurova Holding A.S.*, 895 F. Supp. 2d 513 (S.D.N.Y. 2012), rev'd on other grounds, 750 F.3d 221 (2d Cir. 2014) ............................................................. 18

*Technologists, Inc. v. MIR's Ltd.*, 725 F.Supp.2d 120 (D.D.C. 2010) .................................... 12, 13

3

*Underwood v. United Republic of Tanzania*, 1995 U.S. Dist. LEXIS 1333, 1995 WL 46383
(D.D.C. Jan. 27 1995) ......................................................................................... 9
*United States v. Jones* , 29 F.3d 1549 (11th Cir. 1994) ............................................ 5
*VentureForth Holdings, LLC v. Joseph*, 80 F.Supp.3d 147 (D.D.C. 2015).................................. 13
*Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694 (1988) ........................................ 12
*Water Splash, Inc. v. Menon*, 137 S. Ct. 1504 (2017) ............................................. 8, 11

**Statutes**
28 U.S.C. § 1602, *et seq.*....................................................................................... 5
28 U.S.C. § 1608............................................................................................. 7, 8, 13
9 U.S.C. § 12 ....................................................................................................... 12
9 U.S.C. § 9........................................................................................................ 4, 12
9 U.S.C. §§ 201 ........................................................................................... 4, 11, 17

**Rules**
Fed. R. Civ. P. 4....................................................................................... 7, 12, 13, 15
Fed. R. Civ. P. 55.............................................................................................. 5, 15
Fed. R. Civ. P. 60.............................................................................................. 5, 15

**Treatises**
Convention on the Recognition and Enforcement of Foreign Arbitral Awards ................ 4, 17, 18
Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or
Commercial Matters, Nov. 15, 1965, 20 U.S.T. § 361, *et seq.*........................................ 5, 8, 12

ASSOULINE & BERLOWE, P.A.

Respondent, CVG Ferrominera Orinoco, C.A. ("Respondent" or "FMO"), respectfully submits this motion to vacate the Court's Order dated September 23, 2020 (the "Order') (EDF No. 17), which granted Petitioner Commodities & Minerals Enterprise Ltd. ("Petitioner" or "CME")'s Petition to Confirm, Recognize, and Enforce Final Arbitration Award and For Entry of Judgment (the "Petition") (ECF No. 1).

## I.     PRELIMINARY STATEMENT

CME commenced this action in December 2019 against FMO, seeking to confirm and enforce an arbitral award issued against FMO, pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), adopted at 9 U.S.C. §§ 201 and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9. CME sought a default judgment against FMO. On April 29, 2020, the Court issued an Order to Show Cause "directing Petitioner to indicate why service of process was sufficient in light of Judge Goodman's Order granting Respondent's Motion to Quash Petitioner's Insufficient Service in a related action. *See Commodities & Minerals Enterprise Ltd. v. CVG Ferrominera Orinoco C.A.*, Case No. 1:17-cv-20196-JEM [ECF No. 16]. There, Judge Goodman held that service of process was insufficient based, in part, on the fact that no summons had been issued nor served on Respondent" (ECF No. 15).[1] On May 1, 2020, CME filed a response to the Court's Order to Show Cause (ECF No. 16) (the "Response"). On September 23, 2020, the Court granted CME's Petition.[2] For the reasons sated below, FMO respectfully request that the Order be vacated.

---

[1] Counsel was never served with the Order to Show Cause dated April 29, 2020 nor CME's response to order to show cause dated May 1, 2020.
[2] Counsel for FMO found out about the Order as the development was covered by news online services www.law360.com and www.GAR.com on September 25, 2020.

**ASSOULINE & BERLOWE, P.A.**

CASE NO.: 19-cv-25217 (DPG)

*First*, CME has failed to demonstrate that service of process on FMO was properly completed under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602, *et seq.* ("FSIA") or the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. § 361, *et seq*. ("Hague Service Convention"). FMO is an agency or instrumentality of the Bolivarian Republic of Venezuela ("Venezuela"). FMO's legal status under the Foreign Sovereign Immunities Act ("FSIA") has been recognized in several proceedings connected to CME's Petition, including Judge Goodman's order quashing service on FMO, referred to in the Court's Order to Show Cause.[3] In the Response, CME does not deny FMO's legal status. CME, however, has failed to follow the service provisions contained in the FSIA in a substantial manner, thus its service attempts should not be deemed as establishing actual notice on FMO. Absent proper service of process, a default judgment is plainly unwarranted.

*Second*, even if CME had effected service on FMO, a default would be inappropriate in this case. Pursuant to Rule 55(c) or Rule 60(B)(1)(b), the Court may vacate the order for good cause or excusable neglect, respectively. Fed. R. Civ. P. 55 and 60. As fully set below, FMO is able to show that (1) it committed excusable neglect in making an appearance in this case, (2) it has a meritorious defense, and (3) CME will not be prejudiced if the Court vacates the Order.

## II.     FACTUAL BACKGROUND RELEVANT TO THIS MOTION

CME commenced this action in December 2019 seeking to confirm and enforce an arbitral award dated December 20, 2018 (the "Award") issued under the Rules of Arbitration of the Society of Maritime Arbitrators against FMO. (ECF No. 1)

---

[3]  *Commodities & Minerals Enterprise Ltd. v. CVG Ferrominera Orinoco, C.A.*, 1:16-cv-00861-ALC (S.D.N.Y.), Order dated September 29, 2016. A true copy of Judge Goodman's order dated April 4, 2017 is here attached as Exhibit "A".

ASSOULINE & BERLOWE, P.A.

According to the affidavit of service filed with the Court, on March 30, 2020 (ECF No. 14 – Affidavit of Bruce Paulsen), CME couriered a single document, the Petition, to the attorneys that represented FMO in the arbitration proceeding leading to the arbitral award. ECF No. 14, ¶ 4. The affidavit of service also states that a package that it included only the petition was hand couriered to FMO's last known address. Significantly, according to CME's own admission, the label on the package supposedly delivered to FMO's offices in Venezuela did not include the name of department or any individual recipient, be FMO's President, CEO or General Counsel. ECF No. 14, ¶ 8.

On April 29, 2020, the Court issued the Order to Show Cause, requesting that CME indicate why service on FMO was sufficient in light of Judge Goodman's order dated April 4, 2017, quashing service on FMO in a related action before this same Court. On May 1, 2020, CME filed its response to the Order to Show Cause.  On September 23, 2020, the Court adopted the Order.

FMO now seeks to vacate the default entered against it.

### III.     MEMORANDUM OF LAW

**A. The Order Should be Vacated because CME has not Demonstrated that Service of Process was Properly Effectuated Against FMO**

The courts of this district have recognized that an entry of default or default judgment can be set aside if it was not properly entered at the outset, including circumstances where proper service of the complaint is lacking.  *See De Gazelle Group, Inc. v. Tamaz Trading Establishment*, 817 F.3d 747, 748-749 (11th Cir. 2016); *Rismed Oncology Systems, Inc. v. Baron*, 638 Fed.Appx. 800, 805-806 (11th Cir. 2015) ("[t]ypically, insufficient service of process on a party operates to prohibit a court from entering a default judgment against that party.") Thus, a default entered in the absence of proper service is void and should be set aside. A court need not consider whether the plaintiff will be prejudiced, whether the defendant has a meritorious defense, or whether the

default was the result of the defendant's culpable conduct; ineffective service of process, alone, precludes entry of a default judgment.

The Federal Rules of Civil Procedure provide that a "foreign state or its political subdivision, agency or instrumentality must be served in accordance with 28 U.S.C. § 1608." Fed. R. Civ. P. 4(j)(1). The FSIA is the source of jurisdiction in federal court over claims against foreign states, their agencies, or their instrumentalities. *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989). Hence, to obtain personal jurisdiction over a foreign state, agency or instrumentality, service must be made by one of the means identified in 28 U.S.C. § 1608.

28 U.S.C. § 1608(b) states:

(b) Service in the courts of the United States and of the States shall be made upon an agency or instrumentality of a foreign state:
(1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the agency or instrumentality; or
(2) if no special arrangement exists, by delivery of a copy of the summons and complaint either to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process in the United States; or in accordance with an applicable international convention on service of judicial documents; or
(3) if service cannot be made under paragraphs (1) or (2), and if reasonably calculated to give actual notice, by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state—
(A) as directed by an authority of the foreign state or political subdivision in response to a letter rogatory or request or
(B) by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served, or
(C) as directed by order of the court consistent with the law of the place where service is to be made.

Therefore, this Court can exercise jurisdiction over FMO only if it has been properly served pursuant to 28 U.S.C. § 1608(b). As fully explained below, CME failed to follow the statutory requirements of § 1608(b): (a) there is no special arrangement for service of process between CME

and FMO; (b) no delivery of a summons required specifically mentioned in § 1608(b)(1) has been effected; and (c) there is no actual notice in accordance with § 1608(b)(3).

(1) <u>Service on an Instrumentality of a Foreign Sovereign</u>

As already stated, the FSIA governs service of process on foreign sovereigns and their agencies and instrumentalities and authorizes service in accordance with the Hague Service Convention, among other methods. See 28 U.S.C. § 1608(b). The Hague Service Convention requires member-states "to establish a central authority to receive request for service of documents from other countries." *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1508 (2017). (citation omitted).  Both the United States and Venezuela are parties to the Hague Service Convention.

(2) <u>There is no Special Arrangement regarding the service of process</u>

In its Response, Petitioner alleges that FMO and CME agreed to a method of service by the incorporation of the rules of arbitration of the Society of Maritime Arbitrators and that article 35 of said rules contains language concerning the manner of delivery of documents in the arbitration and in post-arbitration enforcement proceedings. Hence, CME asserts that an acceptance of a set of arbitration rules within an arbitration clause providing the manner of delivery of documents in that arbitration applies, not only to the arbitration proceeding, but also to *the initiation of a separate lawsuit in domestic court*. This assertion cannot be the case.

A "special arrangement" effectively waives an instrumentality's right to receive service via a validly executed treaty. Therefore, courts ensure that the purported agreement was specifically meant to waive such right in the context of a lawsuit. To that end, courts require that the purported agreement demonstrates that parties' intention that it would govern service of process for the *specific suit at issue.  See Hardy Exploration & Prod. (India), Inc. v. Gov't of India*, 2016 U.S. Dist. LEXIS 164956, *24 (D.D.C. Nov. 30, 2016) (granting in part respondent's motion to dismiss

9

on the grounds that the "plain language of [the service provision] appears to be limited to notices and communications specifically prescribed in the [contract] itself"). Incorporation by reference to a set of arbitration rules, by itself, cannot be construed as an intention by instrumentality to waive a fundamental right as proper service of process. Such remote reference should constitute a manifestation of intent by the instrumentality as to constitute a "special arrangement" under the FSIA.

In light of these demanding requirements, special arrangements most commonly arise in the context of a contract dispute in which, as part of the bargained-for-exchange in the contract, the state or instrumentality agreed to waive the requirement of service through an applicable treaty and accept service via some other means. Even in those cases, however, courts take care to ensure that the special arrangement actually relates to service in the context of the specific lawsuit at issue. *Orange Middle E. & Afr. v. Republic of Guinea*, 2016 U.S. Dist. LEXIS 65147, *9 (D.D.C. May 18, 2016) (stressing the distinction between broad language designed to cover service of documents in subsequent lawsuits and limited language regarding service under the contract); *Underwood v. United Republic of Tanzania*, 1995 U.S. Dist. LEXIS 1333, *6, (D.D.C. Jan. 27 1995) (concluding that a contractual provision requiring that any notices "required or permitted" under the contract would be effective when mailed was not a special arrangement for service in a lawsuit regarding the same contract.)

*Grupos Unidos por el Canal, S.A. v. Autoridad del Canal de Panama*, 2018 WL 3059649, Case No. 17-23996-Civ-Scola (S.D. Fla. June 20, 2018), supports this reasoning. In that case, two parties file a motion to vacate an ICC final arbitration award in favor the Panama Channel Authority (the "ACP"). The petitioners asserted that they had delivered notice in compliance with the special arrangement under the FSIA and that there was substantial compliance because the

ACP had actual notice of the petition. *Id.* at *2. According to petitioners, the special arrangement arose out the notice language contained the parties' contract and the terms of reference executed by the parties in the underlying ICC arbitration proceeding. *Id.* Judge Scola disagreed with petitioner's arguments and held that no special arrangement existed between petitioners and the ACP. Although Judge Scola distinguished cases (some of them cited in the Response) where the served party had waived service of process, those decisions involved a waiver contained in a contract executed by the served party and not the remote reference to a rule included in the arbitration provision contained in the contract, like is the case here.

Therefore, the Court should disregard the fact that article 35 of the SMA Rules mentions "a court action to confirm judgment on the award". A contrary holding would lead to absurd results, as it would eviscerate FSIA and all conventions of service in arbitrations involving states or its instrumentalities. Every action to enforce an arbitral award is necessarily preceded by an arbitration in which the state or instrumentality likely participated. In order to effectively participate, the two parties would need to agree upon a specific method by which documents are exchanged. Were these agreements be sufficient to constitute a special arrangement, the enforcement of all arbitral awards would be exempt from all treaty requirements regarding service merely because the state or instrumentality participated in the underlying arbitration. Rule 35 of the SMA is overboard in its scope and even draconian with respect to service of post-arbitration proceedings. In this specific case, FMO never gave its consent to Rule 35 of the SMA Rules in particular or otherwise waived service of process according to the FSIA, thus attributing intention to FMO's acceptance of SMA arbitration should be insufficient to establish a special arrangement under § 1609(b)(1).

In addition, Venezuela is not a party to the service-by-mail provisions of the Hague Service Convention. See, https://www.hcch.net/en/instruments/conventions/status-table ("The Republic of Venezuela does not agree to the transmission of documents through postal channels.") Accordingly, FMO, as an instrumentality of Venezuela, could hardly agree to be served by mail or courier as CME asserts it did in the present action when Venezuela has rejected service of process using those means. *See Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1508 (2017) (acknowledging that signatories parties to the Hague Service Convention have the ability to object to the sending of judicial document –including service- by postal channels). *See also Codigo Music, LLC v. Televisa S.A. de C.V.,* 2017 WL 4346968, Case No. 15-civ-21737-Williams/Simonton (S.D. Fla. Sept. 19, 2017) (*citing OGM, Inc., v. Televisa, S.A. De C.V., et al.,* No. CV 08-5742-JFW (JCx), 2009 WL 1025971, *1 (C.D. Cal. April 15, 2009) (holding that party in located in Mexico could not be served by postal channels as Mexico objected to service-by-mail provisions of the Hague Service Convention)).

(3) CME has failed to perfect service of initial Process on FMO.

Even if the Court were to conclude that there is a special arrangement for service of process between CME and FMO, this process would be substantially defective.

Besides being an independent requirement to maintain a cause of action, service of initial process is the means through which a court acquires jurisdiction over the person of the defendant. *Onmi Capital Int'l, Ltd. v. Rudolph Wolff & Co.*, 484 U.S. 97, 104 (1987). *See also Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) ("Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant.") A failure to effect proper service or to obtain a waiver precludes the exercise of personal jurisdiction over a defendant on that basis alone.

CASE NO.: 19-cv-25217 (DPG)

Chapter 2 of the FAA (incorporating the New Convention) does not contemplate the method of service of a motion to confirm an arbitral award on a foreign party. *See* 9 U.S.C. §§ 201-208. Consequently, courts have uniformly held that initial service of a motion to confirm an arbitration award on a foreign party is governed by Fed. R. Civ. P. 4 rather than the FAA. *See Americatel El Salvador, S.A. de C.V. v. Compania de Telecomunicaciones de El Salvador, S.A. de C.V.*, 2007 WL 2781057, Case No. 07-21940 (S.D. Fla., Sept. 19, 2007). *See also PTA—FLA, Inc.* v. *ZTE USA, Inc.* 2015 WL 12819186, Case No. 3;11-cv-510-J-32JRK (M.D. Fla. August 5, 2015) (applying Rule 4 to service of motion to confirm arbitral award); *Technologists, Inc. v. MIR's Ltd.*, 725 F.Supp.2d 120, 125-126 (D.D.C. 2010) (holding that "the weight of authority supports application of Rule 4 to the service of a motion to vacate an arbitration award" and that the service provisions of 9 U.S.C. § 12 were substantially identical to those included in 9 U.S.C. § 9 (confirmation proceedings)).

Fed. R. Civ. P. 4(f) provides that in order to serve a defendant in a foreign country, the plaintiff must first determine if an international treaty establishes the procedures for such service. Because the United States and Venezuela are both signatories to the Hague Service Convention, CME had the obligation to first attempt service pursuant to this international treaty. The Hague Service Convention applies in all cases where judicial or extrajudicial documents are transmitted for service abroad, and compliance with the Hague Service Convention is mandatory in all cases where it applies. *See Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 698 (1988).

CME has not demonstrated that this Court should deviate from Judge Goodman's April 4, 2017 Order or its own precedent in *Americatel El Salvador, S.A. de C.V. v. Compania de Telecomunicaciones de El Salvador, S.A. de C.V.*, 2007 WL 2781057 (S.D. Fla., Sept. 19, 2007) In that case, the award creditor of an arbitral award rendered in El Salvador attempted to confirm

ASSOULINE & BERLOWE, P.A.

the award in Miami, Florida. *Id.* at *1. The award creditor attempted service on the award debtor by delivering a package with a copy of the petition for confirmation by international courier to the award debtor's in house counsel in El Salvador and its outside counsel in Miami. *Id.* The package did not include a summons. *Id.* After the Court entered an order confirming the award, the award debtor filed a motion to set aside judgment and quash service. The Honorable Federico A. Moreno granted the award debtor's motion to quash. *Id.* at *2. Judge Moreno first concluded that the award creditor was required to follow Fed. R. Civ. P. 4to serve the petition to confirm an arbitration award (*relying on In the Matter of Arbitration between Marine Trading Ltd. v. Naviera Comercial Naylamp S.A.*, 879 F.Supp. 389, 392 (S.D.N.Y. 1995)).  With respect to the sufficiency of the service on the award debtor, Judge Moreno held that sending international courier packages without summons did not conform to Fed. R. Civ. P. 4 and vacated the order confirming the arbitration award for lack of service. *Id. See also VentureForth Holdings, LLC v. Joseph*, 80 F.Supp.3d 147 (D.D.C. 2015) ("[t]his Court holds that service on a resident complies with § 9 of the FAA if service is provided in accordance with Rule 4 of the Federal Rules of Civil Procedure"); *Technologists, Inc. v. Mir's Ltd.,* 725 F.Supp.2d 120, 126 (D.D.C. 2010) (holding that section 9 of the FAA requires service to be made on a foreign party accordance Rule 4).

The need to include a summons with the complaint or initial pleading is particularly important in FSIA cases. Here, CME relies on the existence of a purported special arrangement with FMO under 28 U.S.C. § 1608(b)(1) to argue that service of process was proper. But § 1608(b)(1) is very specific as to the documents that CME needed to provide to FMO to complete service: "a copy of the summons and complaint". As CME, by its own admission, failed to include the required summons, then it failed to fulfill the strictures of § 1608(b)(1). CME cannot rely upon

the existence of a special arrangement under § 1608(b)(1) and then fail to comply with the requirements of that provision.

Both 28 U.S.C. § 1608(b)(1) and Fed. R. Civ. P. 4(a) through (c) require that a summons be issued at the commencement of the action and that it be served together with a copy of the complaint. CME's obtaining issuance of a summons and serving it on FMO should not be optional. *See Omni Capital Int'l, Ltd.*, 484 U.S. at 104 ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.") FMO has yet to receive, through any means, *a* summons. For this reason alone, CME has failed to serve sufficient process, and CME's attempted service should be quashed. *See* Judge Goodman's Order dated April 4, 2017 at p. 6. *See also Albra v. Advan, Inc.*, 490 F.3d 826 (11th Cir. 2007) (affirming district court's quashing of service of process where plaintiff had served summons without attaching a copy of complaint).

(4) <u>FMO cannot be attributed with actual notice.</u>

CME's reliance on *Harris Corp. v. Nat'l Iranian Radio & Television*, 691 F.2d. 1344, 1352 (11th Cir. 1982) is misplaced. In *Harris*, the court found that service was sufficient under the FSIA despite technical deficiencies because the defendant had actual notice. However, the court reached that conclusion after evaluating the efforts that the plaintiff made to comply with the FSIA, which included delivering the documents in both in English and Farsi and by diplomatic channels. CME, however, only relied upon the existence of the purported special arrangement with FMO and then failed to substantially comply with this provision. *See Grupos Unidos por el Canal, S.A.* at *4. CME asserts that it delivered the Petition to FMO's headquarters in Venezuela, but the Petition was seemingly untranslated, it was not addressed to any specific individual or department within FMO, and, fatally to CME, did not include the summons. The Court should wonder how FMO

could assess the nature of the package likely delivered to its front desk, the timeframe to make an appearance in this Court and the consequences of not doing so, without a proper summons containing this vital information. Therefore, under no possible scenario can CME allege that it has substantially complied with the service provisions of the FSIA as to trigger FMO's actual notice. *Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries,* 353 F.3d 916, 925 (11th Cir. 2003) ("[E]ven though OPEC had actual notice of the filing of the suit, service of process was ineffective because it was clearly not in substantial compliance with the requirements of Fed.R.Civ.P. 4(f)(2)(C)(ii).") In this case, CME's omission does not involve a simple, curable technical deficiency in the method service but a complete disregard of due process safeguards and Judge Goodman's order requiring a summons.

**B. In the alternative, the order should be vacated under Fed. R. Civ. P. 55(c) or Fed. R. Civ. P. 60(B)(1)(b)4**

Generally, entries of default and default judgment are disfavored by courts. In *Perez v. Wells Fargo, N.A.*, 774 F.3d 1329, 1137-1338 (11th Cir. 2014), the Eleventh Circuit stated that standard applicable to motion to vacate under Rule 55(c):

> Rule 55(c) provides that a court "may set aside an entry of default for good cause...." Fed.R.Civ.P. 55(c). We have previously noted that "'[g]ood cause' is a mutable standard, varying from situation to situation." *Compania Interamericana Export–Import, S.A. v. Compania Dominicana de Aviacion,* 88 F.3d 948, 951 (11th Cir.1996) (citation omitted). While the standard must be construed to have substance, we have nonetheless described it as a "liberal one." *Id.* (citation omitted). As we have explained, "'good cause' is not susceptible to a precise formula...." *Id.* Rather, we evaluate various factors that may be applicable in a given case. *See id.* For example, courts generally consider whether the default was culpable or willful, whether setting it aside would prejudice the non-moving party, and whether the defaulting party may have a meritorious defense. *Id.* Depending on the circumstances, courts have also considered factors such as

---

4  Although FMO moves to vacate the Order pursuant to Fed. R. Civ. P. 55(c)'s "good cause" standard, it is also offering within this motion, sufficient evidence to satisfy Rule 60(B)(1)(b)'s more demanding "excusable neglect" requirement. *See Architectural Ingenieria Siglo XXI, LLC v. Dominican Republic,* 788 F.3d 1329 (11th Cir. 2015).

"whether the public interest was implicated, whether there was significant financial loss to the defaulting party, and whether the defaulting party acted promptly to correct the default." *Id.* (citation omitted). On the other hand, where a party demonstrates an intentional or willful disregard of the judicial proceedings, good cause to set aside the default does not exist. *Id.* at 951–52.

(1) <u>FMO was unable to interpose papers earlier.</u>

First, FMO respectfully refers the Court to the Declaration of FMO's President, Abel Jimenez, true copies of which are herewith attached in both Spanish and English as Exhibit B. This declaration was recently filed in the parallel proceeding concerning CME's petition to confirm the General Piar award pending before the Southern District of New York (Case No. 19 Civ. 11654 (ALC)**.**  As shown, FMO's ability to timely enter an appearance has for some time been caught up in the ramifications of the recently increased and enlarged United States sanctions regime imposed against Venezuela. *Id.* Gaining access to a means of obtaining and transferring United States currency to local counsel for the purpose of defending the Petition has proven particularly intractable. *Id. See also Crystallex International Corp. v. PDV Holding Inc.,* 2019 WL 6785504, C.A. No. 15-cv-1082-LPS, *9 (D. Del. Dec. 12, 2019) (vacating default against Venezuela because "the default was not the result of the Republic's "culpable conduct" but rather due (at least as it appears from the record) to the change in government in the Republic, the crises that nation is experiencing, and a vast amount of pending litigation confronting Venezuela.")

These impediments were then greatly exacerbated by the COVID-19 pandemic, which caused further delays, particularly in FMO's region of Venezuela, with mass absences from the several different offices that would normally need to coordinate in arranging a response to CME's legal action. *Id.* We note that, even in this country, "the impact of the COVID-19 pandemic on business operations is unprecedented and excuses delays in normal litigation procedures." *Modern Font Applications v. Alaska Airlines,* 19 Civ. 00561, 2020 WL 3065157 (D. Utah, Jun. 9, 2020); *see also, Hall-Johnson v. Golden Gate Regional Center Inc.*, No. 19 Civ. 04177, 2020 WL 2474386  (N. D.

17

CASE NO.: 19-cv-25217 (DPG)

Cal. May 13, 2020) ("[T]he instant motion was briefed during the COVID-19 public health crisis. Under the circumstances, the Court will consider plaintiff's untimely-filed opposition.").

That FMO has, if only now, managed to extract itself from the web caused by these factors and be heard in this action and not willingly cede the issues raised by CME. An appearance has now been made by the undersigned counsel. And, again, FMO now stands ready to gather its supports and make the full nature of its position clear. Given the courts' oft-noted strong public policy preference for deciding disputes on the merits, FMO would thus ask that Order be vacated.

(2) <u>FMO has several meritorious defenses against the confirmation and enforcement of the Final Award.</u>

This proceeding is governed by the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards of 1958 ("the New York Convention"). The New York Convention is applicable to the courts of the United States pursuant to the Federal Arbitration Act ("FAA"). 9 U.S.C. § 201 *et seq.*

The New York Convention applies to "arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought." New York Convention, Art. I(1).

*First*, Article V(1)(c) of the New York Convention permits a court to refuse to confirm an arbitral award when:

> The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of submission to arbitration . . . .

In this case, the Final Award addresses matters over which FMO has not consented to arbitration. In that regard, FMO repeatedly asserted during the course of the arbitration that it had not consented to arbitrate issues concerning the so-called "Residual Contracts" and determinations concerning those agreements were outside the parties' arbitration agreement.

**ASSOULINE & BERLOWE, P.A.**

Here, the Panel improperly exercised jurisdiction by awarding damages arising out the "Residual Contracts." Since this presents an issue of arbitrability, it is presumptively reviewed by this Court de novo. *See Sonera Holding B.V. v. Cukurova Holding A.S.*, 895 F. Supp. 2d 513, 521 (S.D.N.Y. 2012), rev'd on other grounds, 750 F.3d 221 (2d Cir. 2014) (whether award should be denied enforcement under Article V(1)(c) of New York Convention because the tribunal exceeded authority in awarding damages beyond those permitted by submission to arbitration is a "claim regarding the scope of arbitrability"); *Kristian v. Comcast Corp.*, 446 F.3d 25, 48 (1st Cir. 2006) ("damages limitation" in agreements "poses a question of arbitrability"). The presumption of *de novo* review can only be overcome if "the parties clearly and unmistakably provide otherwise." *Howsam*, *v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83 (2002) (*quoting AT&T Techs., Inc. v. Comms. Workers,* 475 U.S. 643, 649 (1986)); *see also, Rent-A-Center v. Jackson,* 561 U.S. 63, 69 n.1 (2010) (the "'clear and unmistakable requirement' . . . pertains to the parties' manifestation of intent" (emphasis in original)); *First Options of Chicago v. Kaplan*, 514 U.S. 938, at 944–45 (1995).

*Second*, the award should not be confirmed because doing so would be contrary to the public policy interests of the United States. *See* New York Convention, Article V(2)(b). Enforcing a contract [for otherwise legitimate goods or services] that has been procured by bribery in favor of the party that secured such contract thought corruption is against U.S. public policy.  A court must not give the U.S. judiciary's stamp of approval, to an award of lost profits based on a contract obtained through the bribery of foreign public officials and other illegal acts, in violation of well-defined U.S. public policy. *England v. Sys. Mgmt. Am. Corp.,* 38 F. Appx' 567, 572 (Fed. Cir. 2002). During the course of the arbitration, FMO submitted numerous evidence to prove that CME has secured all of its agreements with FMO, including the TSMC, through corruption of foreign

officers and clear violations other Venezuelan laws. As reflected in the final award, the arbitral tribunal rejected FMO's corruption defense. In doing so, the arbitral tribunal failed to consider most of the evidence submitted by FMO, which established numerous red flags of corruption acts committed by CME and applied the wrong standard of proof in this regard. Likewise, the arbitral tribunal impeded FMO's from securing evidence from CME in connection with the allegations of corruption. Confirming the final award would thus violate public policy and FMO should be provided an opportunity to have arbitral tribunal's determination on corruption reviewed by the Court.

Furthermore, courts, not arbitrators decide whether enforcement of an award would contravene public policy. *See, Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 638 (1985) ("[T]he national courts of the United States will have the opportunity at the award-enforcement stage to ensure that the legitimate [public policy] interest . . . has been addressed.") Therefore, the Court must independently review the arbitral record on the issue of corruption.

(3) <u>CME would suffer no prejudice.</u>

The granting of this motion to vacate does not impose any prejudice on CME, which was obviously in no hurry to see this December 20, 2018 award confirmed, having waited to file the Petition until December 19, 2019. Furthermore, the parties are currently briefing CME's petition to confirm the final award's sister award pending before the Southern District of New York (Case No. 19 Civ. 11654 (ALC)**.** FMO's defenses in that proceeding are substantially similar to the above-stated meritorious defenses. As such, should the Court grant FMO's motion to vacate, CME will suffer no prejudice to defend the same arguments that CME is already briefing in the Southern District of New York.

## IV.    CONCLUSION

CME has failed to meet its obligation to perfect service of initial process on FMO, as both its method of attempted service and its process were defective and deficient. In the alternative, FMO has shown good cause or excusable neglect to vacate the Court's order dated September 23, 2020. For these reasons, FMO respectfully request that the Court vacate its Order dated September 23, 2020 and order CME to effect service pursuant to the FSIA or provide FMO with an opportunity to file an opposition to CME's petition to confirm the final award within twenty (20) days from the date the Order is vacated.

Dated September 30, 2020.

> **ASSOULINE & BERLOWE, P.A.**
> 1250 Mary Street, Ste. 100
> Miami, FL 33133
> Telephone: (305) 567-5576
> Facsimile:  (305) 567-9343
> By: */s/ Daniel E. Vielleville*
> Daniel E. Vielleville (FBN 940496)
> DEV@assoulineberlowe.com
> Secondary:  eo@assoulineberlowe.com
> *Attorneys for Respondent CVG Ferrominera*
> *Orinoco, C.A.*

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 30, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

> */s/ Daniel E. Vielleville*
> Daniel E. Vielleville, Esq.